UNITED STATES ex rel. MISKIC v. UHL, Commissioner of Immigration and Naturalization.

District Court, S. D. New York.

Oct. 19, 1942.

166

Melton, Lebovici & Arkin, of New York City, for petitioner.

Mathias F. Correa, of New York City (Samuel Brodsky, Stuart Z. Krinsly, and Max D. Novack, all of New York City, of counsel), for Uhl.

RIFKIND, District Judge.

The facts are not in dispute. It appears from the petition for the writ of habeas corpus and the return thereto that the relator is a native and subject of Yugoslavia; that on November 26, 1939, he entered the United States on board the S. S. Rad as a seaman thereon; that he has since remained in the United States illegally, in violation of 8 U.S.C.A. §§ 166, 222, and the rules duly promulgated thereunder; that after the lapse of two years and four months from the time of his entry, namely, on March 30, 1942, the relator was taken into custody by the Immigration and Naturalization Service; that thereupon he was duly granted an administrative hearing and found to be within the United States in violation of law; and on June 27, 1942, he was ordered deported to Yugoslavia.

Deportation to Yugoslavia is now impracticable by reason of the Nazi invasion of that country. Arrangements have, therefore, been made to deport the relator to England where the seat of the Yugoslav Government is presently located, "as the first leg of his ultimate journey to Yugoslavia". In England it is intended to surrender the relator to the Yugoslav authorities. Ultimate return to Yugoslavia is "contemplated" under an agreement between the allied nations including Yugoslavia and Great Britain.

The case represents a well meant and carefully considered attempt of the Immigration and Naturalization Service to deal with the very serious problem of the deserting seaman. The rates of compensation upon the ships of several allied nations which touch our ports are considerably below the rates which prevail upon the American and Panamanian flag ships. Other conditions of employment show a similar disparity in standards. Seamen of allied nations in substantial numbers have, upon arrival at American ports, deserted their ships and refused to reship except upon vessels of the nation paying the highest rates of compensation. As a result thereof, it is asserted by the government that the war effort of the United States is "grievously impaired". The deserting seamen have relied upon the impracticability of deportation to assure their unmolested stay in the United States in violation of law. Until taken into custody they have had no trouble in finding shore employment.

 The urgency of the battle of transportation which is now being waged by the United States as part of its war for survival may well be judicially noticed. No unnecessary obstacle should be placed by the courts in the path of any governmental agency which is contributing to victory in that battle. Despite these considerations, it is so clear that the government's proposed remedy is beyond the provisions of the statute that it cannot be permitted. Deportation to England is not deportation to Yugoslavia. The suggestion that the journey to England is but the first leg of a suspended journey to Yugoslavia is untenable in view of the government's surrender of the alien upon his arrival in England. The considerations which impair the legal validity of the proposed deportation have been fully expounded in Judge Chesnut's opinion in Moraitis v. Delany, D. C. Md., 46 F.Supp. 425, decided August 28, 1942, and need not be repeated.

The temptation to stretch the language of the statute would perhaps, in view of the national emergency, be irresistible if no lawful remedy were readily available. But the difficulty confronting the Immigration authorities is soluble by an amendment to the deportation statutes. No delay need be encountered since Congress is now in session. In a war in which ideas and ideals are locked in conflict it would but serve to emphasize the nobility of our tradition if, even in dealing with an alien admittedly unlawfully in our midst, we are scrupulously careful to act within the law.

 The deportation to England being unlawful, it does not follow that the alien is entitled to his immediate discharge. The

government is entitled to hold him in custody for a reasonable time in an effort to effect his deportation to Yugoslavia. If, after the lapse of a time interval reasonable under all the circumstances, it appears that the warrant cannot be executed, the relator may file a new petition for a writ.

Writ discharged.